[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The present action involves a dispute regarding the employment relationship between the plaintiff, Doreen M. Barbuto, and the defendant, The William Backus Hospital. The plaintiff's seven count amended complaint, filed against the defendant on October 25, 1994, sets forth the following relevant facts:
On or about December, 1984, the plaintiff, who had previously been employed by the defendant as a part-time laboratory secretary, began working for the defendant as a registered nurse. The plaintiff's forty (40) hour week in the position of registered nurse originally consisted of five eight hour shifts, each beginning at 11:00 p.m. and ending at 7:00 a.m. the following morning.
At some point in 1988, the defendant sought registered nurses to work a particular schedule, consisting of two twelve hour shifts. The first shift began at 7:00 p.m. on Friday CT Page 4405 evening and ended at 7:00 a.m. on Saturday morning. The second shift began Saturday evening at 7:00 p.m. and ended Sunday morning at 7:00 a.m. This schedule, which was referred to as the "Baylor Plan," allowed the registered nurse to choose between one of two pay options. The first pay option provided that the nurse would be paid at one and one-half times her present hourly rate with all applicable fringe benefits. The second option provided that the nurse would be paid at two times her present hourly rate, without any fringe benefits.
Prior to accepting a position in the "Baylor Plan," the plaintiff was assured by one of the defendant's agents that the plaintiff's position "would never be taken away and that she could have the position as long as she wanted it." The plaintiff "was further informed that if she chose to leave the position, that position might not be filled, but that the defendant . . . would never take it away as long as she wished to continue in the `Baylor Plan.'"
Originally, the plaintiff agreed to participate in the "Baylor Plan" under the first pay option, at the rate of one and one-half times her hourly rate of pay plus applicable fringe benefits. Approximately one and one-half years later, the plaintiff switched to the second pay option under the plan which provided for pay at a rate of two times her regular hourly rate, without applicable fringe benefits.
On or about May, 1989, the plaintiff again inquired about the permanent nature of her employment in the plan, and was assured by another agent of the defendant that they would never take the position away from her and that the plaintiff would have the position as long as she wanted. Nonetheless, on or about September 13, 1993, the defendant informed the plaintiff that she would no longer be allowed to participate in the "Baylor Plan." The defendant has refused to allow the plaintiff to remain in the "Baylor Plan" and instead has forced her to work at her regular hourly rate of pay on a schedule consisting of every Friday from 7:00 p.m. to 7:00 a.m. Saturday, and every other Saturday and Sunday from 7:00 p.m. to 7:00 a.m. the following morning.
Prior to the defendant's recruitment of registered nurses to participate in the "Baylor Plan," the plaintiff had a professional resume prepared and had begun to seek employment CT Page 4406 as a registered nurse with other employers. She would have continued to seek employment, and eventually accept employment with another employer, but for the defendant's recruitment of registered nurses to fill undesirable shifts through use of the "Baylor Plan."
On or about October 13, 1993, the defendant was made aware of the fact that the plaintiff had retained an attorney in reference to her removal from the "Baylor Plan," and to enforce the plaintiff's employment rights. On February 14, 1994, the plaintiff was suspended for a two day period without pay for an incident which was alleged to have occurred nearly a month earlier on January 16, 1994. In light of the defendant's procedures, and its past history and practice of disciplinary action taken with other employees, the suspension of the plaintiff for two days without pay was both severe and not the normal practice of the defendant. The disciplinary action taken by the defendant against the plaintiff was due to the plaintiff's retention of an attorney and the attempted enforcement of the plaintiff's employment rights.
Counts one through seven of the plaintiff's amended complaint allege, respectively, the following causes of action: breach of express contract, breach of implied contract, promissory estoppel, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. On November 1, 1994, the defendant filed a motion to strike each of the seven counts of the plaintiff's amended complaint, on the ground that said counts, for the specific reasons discussed hereafter, fail to state claims upon which relief can be granted.
Pursuant to Practice Book § 152, a motion to strike may be brought to test the legal sufficiency of a complaint or any of its counts. See Pratt v. Old Saybrook, 225 Conn. 177, 185
(1993). In ruling on a motion to strike, the court must construe the facts in the complaint most favorably to the plaintiff. Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215 (1992). This includes the facts necessarily implied and fairly provable under the allegations but does not include, however, the legal conclusions or opinions stated in the complaint. Westport Bank Trust Co.v. Corcoran, Mallin Aresco, 221 Conn. 490, 495 (1992). "If any facts provable under the express and implied allegations CT Page 4407 in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." (Citations omitted.) Bouchard v. People's Bank, 219 Conn. 465,471 (1991).
I. Breach of Express or Implied Contract
The defendant argues that the first and second counts of the plaintiff's amended complaint are legally insufficient because the plaintiff has failed to allege therein that her employment was something other than at-will and the plaintiff has failed to otherwise plead the material elements of either an express or an implied employment contract. In this regard, the defendant argues that assurances of permanent employment do not remove an employment relationship from the employment at will doctrine. Additionally, the defendant argues that the plaintiff has failed to establish that an actual agreement or meeting of the minds between the two parties ever existed regarding the plaintiff's employment, and the material terms thereof, thereby precluding the conclusion that the defendant has assumed contractual liability to the plaintiff.
In response, the plaintiff argues that the assurances made by the defendant's agents, which are set forth in her amended complaint, establish that she was not an at-will employee. Additionally, the plaintiff argues that the defendant's assurances of permanent employment, and her acceptance of such-offer of permanent employment by continued employment in the position, created contractual liability on behalf of the defendant. Finally, the plaintiff argues that her amended complaint sufficiently alleges all of the material terms of both an express and an implied employment contract.
The general rule in Connecticut is that contracts of permanent employment, and employment contracts for an indefinite duration, are terminable at the will of either party. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,474 (1980). Thus, unless an employee has a contract for a specified term, such employee is an employee at will and can be terminated at any time without cause. Morris v. HartfordCourant Co., 200 Conn. 676, 677 (1986).
In the present case, the plaintiff's amended complaint does not allege that she had an employment relationship with the defendant for a specified term. Accordingly, the court CT Page 4408 may infer that the plaintiff and the defendant had an employment at will relationship. Id. (where complaint fails to allege an employment contract for a specified term, court may infer that plaintiff-employee and defendant-employer had employment at will relationship).
Over the years, however, exceptions have been made to the general rule regarding the termination of at-will employees, where the courts have found implied employment contracts terminable for cause. Coelho v. Posi-Seal International,Inc., 208 Conn. 106, 117-19 (1988).
 The common law employment `at will' relationship may be modified by acts of the employer which are sufficiently definite to establish an express contract between the parties, or which constitute a definite promise upon which the employee could reasonably have relied. (Citation omitted.)
Kelley v. United States Shoe Corp., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 42492 (November 5, 1993, Rush, J.).
"In order to alter the common law employment `at will' relationship, [however], it is necessary to demonstrate a deliberate substitution of an employment policy which must be based upon specific representations rather than expressions of intentions with regard to future employment." Id., citingD'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 214-16 (1987). For example, "under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee." Carbone v. Atlantic Richfield Co., 204 Conn. 460,471 (1987).
In order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. Lembo v. Schlesinger, 15 Conn. App. 150, 154 (1988). The burden rests on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract.Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co.,159 Conn. 242, 246 (1970). In this regard, "[a] contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties."Christensen v. BIC Corp., 18 Conn. App. 451, 458 (1989) CT Page 4409 (setting aside a verdict for an employee who alleged his employer impliedly promised to pay bonuses even to former employees of the company).
A contract implied in fact, like an express contract, depends on actual agreement. Coelho v. Posi-SealInternational, Inc., supra, 208 Conn. 111. Thus, in order to set forth a claim for breach of implied contract, a plaintiff must allege that the defendant "agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment" to the plaintiff. (Citations omitted; internal quotation marks omitted.) Id., 112.
Moreover, aside from the standard contract requirements of offer, acceptance and consideration, the Supreme Court has indicated that terms regarding the duration and conditions of one's employment, as well as one's salary and fringe benefits, are essential to the existence of an employment contract.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 214-15 (holding that no contract or promissory estoppel cause of action existed where, inter alia, representations to the plaintiff regarding her employment did not contain these material terms).
In the present case, the "words, action or conduct's relied upon by the plaintiff to establish her claims for breach of express and/or implied contract are the defendant's alleged representation, on two separate occasions, that the plaintiff's position "would never be taken away and that she could have the position as long as she wanted it." Such a representation is insufficient to establish an immediate intention by the defendant to undertake contractual commitment toward the plaintiff. See, e.g., D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 213
(school principal's statements to teacher, assuring her that she would be rehired the following year, did not manifest a present intention on the part of the defendant to undertake immediate contractual obligations to the plaintiff and, accordingly, did not constitute promises upon which contractual liability could attach).
The allegations of "assurances," that the plaintiff would not be removed from the "Baylor Plan," do not rise to the level of commitment to the plaintiff sufficient to state a cause of action for breach of either express or implied CT Page 4410 contract. See, e.g., Leniart v. C S Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (January 21, 1994, Corradino, J.) (promise to plaintiff that she would not be laid-off held insufficient to establish a cause of action for breach of either express or implied contract); Neuharth v. Conn.Institute for the Blind, Superior Court, judicial district of Tolland at Rockville, Docket No. 42975 (March 8, 1991, Dunn, J.) (allegations of "assurances" that plaintiff would not be discharged do not rise to level of commitment to plaintiff necessary to state cause of action for breach of either express or implied contract).
Moreover, neither of the alleged representations contain any information regarding the material terms of the plaintiff's employment with the defendant, because they do not discuss the conditions thereof, or the salary and fringe benefits associated therewith. Rather, such representations purport only to establish the duration of the plaintiff's position in the Plan, which, as pointed out above, was not specific or definite. Thus, even assuming that the representations made by the defendant to the plaintiff constituted an offer by the defendant to substitute the plaintiff's prior at-will employment position with a modified employment position at a higher rate of pay, the latter employment position constituted nothing more than another employment position terminable at the will of the defendant.
For these reasons, the alleged representations made by the defendant and/or its agents cannot be used to establish the defendant's intention to enter into contractual liability, either express or implied, with the plaintiff. Accordingly, the defendant's motion to strike the first and second counts of the plaintiff's amended complaint are granted.
II. Promissory Estoppel
The defendant argues that the third count of the plaintiff's amended complaint is legally insufficient, because the plaintiff has failed to allege facts sufficient to support an allegation that a promise was made that would be reasonable for an at-will employee such as the plaintiff to rely on, and the plaintiff has failed to allege that injustice can only be avoided through enforcement of the alleged contract. In response, the plaintiff again argues that she was not an at-will CT Page 4411 employee and, as such, it was reasonable for her to rely on promises of employment made to her by the defendant. Additionally, the plaintiff argues that the defendant must expect that its employees will reasonably rely on promises made to induce them to remain with the defendant and not change employers. Finally, the plaintiff argues that allowing the defendant to ignore its responsibilities and promises will submit the plaintiff to an injustice.
"[U]nder the doctrine of promissory estoppel `[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'"D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 213, quoting Restatement (Second), Contracts § 90 (1973). A fundamental element of promissory estoppel is the existence of a "clear and definite promise which a promisor could reasonably have expected to induce reliance.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 213. Thus, "a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." Id.
The alleged representations of the defendant, as set forth above, do not invoke a cause of action for promissory estoppel because they are neither sufficiently promissory nor sufficiently definite to support contractual liability. See,D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 214-15 (school principal's assurances that non-tenured teacher would be rehired the following year held "neither sufficiently promissory nor sufficiently definite" to support a claim of promissory estoppel); Emanuele v. Boccaccio Susanin, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 379367 (April 10, 1992, Miano, J.) (employer's distinct representations to the plaintiff, an at-will employee, that she "had nothing to worry about with respect to her position and that her job was secure as long as she performed her job as she had in the past," held insufficient to invoke a cause of action for promissory estoppel, because said representations were "neither sufficiently promissory nor sufficiently definite to support contractual liability"); Neuharth v. Conn. Institute for theBlind, supra (employer's assurance to plaintiff that she would CT Page 4412 not be fired found "less sufficient to state a claim for promissory estoppel than the facts alleged by the D'Ulisse-Cupo
plaintiff").
The representations made by the defendant manifested no present intention on the part of the defendant to undertake immediate contractual obligations to the plaintiff. Furthermore, neither of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits. At most, the defendant and/or its agents made representations to the plaintiff concerning their expectations for her future employment, but stopped short of making the plaintiff a definite promise of employment on which she could reasonably have relied.
Finally, even assuming that the alleged statements made by the defendant's agents did constitute promises reasonably relied upon, the plaintiff has nonetheless failed to set forth a legally sufficient claim of promissory estoppel, because the plaintiff has failed to allege that injustice can only be avoided through enforcement of the defendant's alleged promises. Accordingly, the defendant's motion to strike count three of the plaintiff's amended complaint is granted.
III. Negligent Misrepresentation
The defendant argues that the fourth count of the plaintiff's amended complaint must be stricken because the plaintiff has failed to allege that, at the time of making the alleged statements to the plaintiff, the defendant knew or should have known that the statements were false and that the position in the "Baylor Plan" would some day be unavailable to the plaintiff. In response, the plaintiff argues that she has clearly alleged that the defendant provided false information regarding the status of her employment and eventually breached its contractual agreement for employment, thereby causing the plaintiff to sustain pecuniary loss.
The principles governing a cause of action for negligent misrepresentation in the state of Connecticut are set forth at § 552 of the Restatement (Second) of Torts (1979):
One who, in the course of his business, profession CT Page 4413 or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 217-18. For a plaintiff to succeed in a cause of action for negligent misrepresentation, he need not prove that the representations allegedly made by the defendant were "promissory" in nature. Id., 218. Rather, it is sufficient to allege that the representations made by the defendant to the plaintiff contained false information, id., 218, and that the defendant knew or should have known at the time the representations were made that they contained false information. Richard v. A. Waldman Sons, Inc., 155 Conn. 343,346 (1967) ("[a]n innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth").
In the present case, the plaintiff alleges that the defendant, in representing to her that a particular position would not be taken away from her, "negligently misrepresented the facts to the [p]laintiff. . . ." However, the plaintiff has failed to allege that the defendant knew, or should have known, at the time of making the alleged statements, that the position would some day be unavailable to the plaintiff. Further, there is no allegation that the defendant had facts available to it at the time of making these alleged statements that they were not true.
For these reasons, the plaintiff has failed to plead the essential elements of a negligent misrepresentation cause of action. Accordingly, the defendant's motion to strike the fourth count of the plaintiff's amended complaint is granted.
IV. Breach of Implied Covenant of Good Faith and Fair Dealing
The defendant argues that the fifth count of the plaintiff's amended complaint is legally insufficient on the ground that, because the plaintiff has failed to allege that she was not an at-will employee, the plaintiff must allege a CT Page 4414 violation of public policy, which the plaintiff has failed to do. In response, the plaintiff argues that because her amended complaint establishes that she is not an at-will employee, she need not carry the burden of proving some violation of an important public policy.
Although Connecticut recognizes the implied covenant of good faith and fair dealing in employment contracts, the Supreme Court has ruled that in terminable-at-will employment relationships, the breach of this covenant must be based upon an "impropriety . . . derived from some important violation of public policy." Magnan v. Anaconda Industries, Inc., supra,193 Conn. 572, quoting Sheets v. Teddy's Frosted Foods, Inc., supra, 179 Conn. 475. Absent a showing that the discharge involves an impropriety which contravenes some important public policy, an at-will employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing. Carbone v. Atlantic Richfield Co., supra,204 Conn. 470-71. To prevail on such a claim, moreover, the plaintiff must plead and prove that her discharge violated an explicit statutory or constitutional provision, or contravened a judicially conceived notion of public policy. Morris v.Hartford Courant Co., supra, 200 Conn. 680.
The plaintiff, an employee-at-will, has failed to identify the particular public policy of the state of Connecticut that has allegedly been contravened by the defendant's actions. Accordingly, the defendant's motion to strike the fifth count of the plaintiff's amended complaint is granted.
V. Intentional Infliction of Emotional Distress
The defendant argues that the sixth count of the plaintiff's amended complaint must be stricken, because the plaintiff has failed to allege facts that constitute extreme and outrageous conduct, which is an essential element of a claim for intentional infliction of emotional distress. In response, the plaintiff argues that whether or not the facts alleged in her amended complaint rise to the level of what is required for a cause of action for intentional infliction of emotional distress is a determination for the fact finder to make.
Connecticut recognizes a cause of action for intentional CT Page 4415 infliction of emotional distress if the following four elements are established: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253
(1986).
The rule which seems to have emerged under this cause of action is that "there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; citation omitted; internal quotation marks omitted.) Id., 254 n. 5. The Restatement states:
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Restatement (Second), Torts § 46, comment (d), quoted inMellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20 (1991, Berdon, J.).
In the present case, the plaintiff does allege that the actions of the defendant, as set forth in her amended complaint, illustrate that the defendant "intended to inflict emotional, psychological and mental distress, or knew or should have known that its conduct would result in emotional, psychological and mental distress. Additionally, the plaintiff has alleged that the conduct of the defendant "was extreme and outrageous and caused the [p]laintiff . . . to suffer severe emotional, psychological and mental distress."
Nonetheless, the plaintiff's claim of intentional infliction of emotional distress should be stricken, because the defendant's conduct in removing the plaintiff from her CT Page 4416 position in the "Baylor Plan," despite its alleged assurances that it would not do so, and the defendant's conduct in disciplining the plaintiff by suspending her for two days, do not rise to the level of "extreme and outrageous" conduct contemplated by either the Restatement or Connecticut caselaw. See, e.g., Petyan v. Ellis, supra, 200 Conn. 245, 253-54 n. 5 (conduct held not extreme and outrageous, where former employer stated to the unemployment compensation division that the plaintiff was fired for unsatisfactory performance, fraud and lying); Emanuele v. Boccaccio Susanin, supra (conduct held not extreme and outrageous, where at-will employee alleged that she was terminated, in part, for false and non-existent reasons in order to intentionally deprive her of benefits and compensation and in contravention of the defendant's performance procedure); Neuharth v. Conn.Institute for the Blind, supra (employer's discharge of plaintiff, despite oral assurances that she would not be discharged, does not rise to level of extreme and outrageous conduct).
Reasonable minds would not be able to differ on the question of whether the conduct of the defendant, as alleged in the plaintiff's complaint, constituted "extreme and outrageous" conduct under the law. Cf. Mellaly v. EastmanKodak Co., supra, 42 Conn. Sup. 21 (conduct did reach such level of outrageousness, requiring issue to go to trier of fact, where plaintiff's supervisor, inter alia, allegedly taunted and harassed the plaintiff about his alcoholism and recovery, urged the plaintiff to handle his alcohol and go get drunk, indiscriminately yelled and screamed at the plaintiff regarding his recovery from alcoholism, and frequently threatened the plaintiff with the loss of his job).
Accordingly, the defendant's motion to strike count six of the plaintiff's amended complaint is granted.
VI. Negligent Infliction of Emotional Distress
Finally, the defendant argues that the seventh count of the plaintiff's amended complaint is legally insufficient, because the plaintiff has failed to allege facts to establish that the defendant knew, or should have realized, that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. In response, the plaintiff CT Page 4417 again argues that whether or not the facts alleged in her amended complaint rise to the level of what is required for a cause of action for unintentional infliction of emotional distress is a determination for the fact finder to make.
"In Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345 (1978), . . . [the Connecticut Supreme Court] first recognized a cause of action for unintentionally-caused emotional distress, and held that recovery [therefor] did not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." (Internal quotation marks omitted.) Morris v. Hartford Courant Co., supra, 200 Conn. 683. The court did conclude, however, that a plaintiff claiming a cause of action for unintentional infliction of emotional distress has the "burden of pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, mightresult in illness or bodily harm." (Emphasis in original; citations omitted; internal quotation marks omitted.) Id.
 Whether the defendant knew or should have realized that his conduct involved an unreasonable risk of causing distress to the plaintiff, and whether the defendant should have realized that such distress, if caused, might result in illness or bodily harm to the plaintiff, as alleged in the complaint, are factual issues to be determined by the jury.
Doe v. Cuomo, 43 Conn. Sup. 222, 237 (1994, Lavine, J.). See also Skirkanich v. Waterbury Hospital, 8 CSCR 694 (June 15, 1993, Pittman, J.) (whether a defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, which might in turn result in illness or bodily harm to the plaintiff, is a proper question for the trier of fact).
In the present case, the plaintiff has alleged in the seventh count that the conduct of the defendant "caused the [p]laintiff . . . to suffer severe emotional, psychological and mental distress." Additionally, the plaintiff has alleged that the defendant "should have realized that its conduct involved an unreasonable risk of causing emotional, psychological and mental distress and that the distress, if it CT Page 4418 were caused, might result in illness or bodily harm." The question of whether the defendant should have realized that its conduct involved an unreasonable risk of causing the plaintiff emotional distress which might result in illness or bodily harm to the plaintiff, is one of fact for the trier of fact. Accordingly, the defendant's motion to strike the seventh count of the plaintiff's amended complaint is denied.
For the reasons stated above, the court grants the defendant's motion to strike the first, second, third, fourth, fifth and sixth counts of the plaintiff's amended complaint and denies the defendant's motion to strike the seventh count of the plaintiff's amended complaint.